IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


JUNE OVERTON-PEREZ,

      Plaintiff,                           Civ. No. 1:16-cv-00951-CL

    v.                                 OPINION & ORDER

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.
_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff June Overton-Perez, acting pro se, seeks judicial review under 42 U.S.C. §

405(g) of the final decision of the Commissioner of the Social Security Administration denying

her application for a period of disability, disability insurance benefits, and supplemental security

income pursuant to the Social Security Act. For the reasons below, the Commissioner's decision

is AFFIRMED.[1]

## BACKGROUND

      Plaintiff was born March 14, 1959, and is currently fifty-eight years old. Tr. 363. Plaintiff

is divorced; has a high school education; continues to occasionally do work akin to a real-estate

auctioneer, and previously worked as a process server, family coordinator, and a court mediator.

Tr. 36-39, 53-55, 356, 358.

---

[1]The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. §
636(c)(1).

In September 2013, Plaintiff filed for a period of disability and disability benefits; she also filed for supplemental security income. Tr. 14. She alleged disability onset beginning January 1, 2008. Tr. 14. On December 4, 2015, Plaintiff had a hearing before an administrative law judge ("ALJ"). Tr. 32. At the beginning of the hearing, and after conferring with her attorney, Plaintiff amended the alleged onset date to August 1, 2011, which was accepted by the ALJ. Tr. 35-36.

In April 2010, Plaintiff was involved in a motor vehicle accident; she states she was a passenger in a PT Cruiser that was hit on the passenger side by an oncoming vehicle. Tr. 756. She suffered contusions from the accident and was treated and released the same day from the emergency room. Tr. 40, 756. Following the accident, Plaintiff sought medical care, complaining of back, shoulder, and chest pain; she indicated she was having trouble getting in and out of her car, causing her to miss work. Tr. 756-57. X-rays showed an irregularity of the cortex at the L5 vertebrae, as well as vertebral asymmetry. Tr. 279. A June 2010 imaging report, however, indicated that her "cervical vertebrae appear[ed] normal in height and alignment," there were "[n]o fractures or significant subluxations," disc spacing "all appear[ed] relatively well preserved," and there was "no abnormal prevertebral soft tissue swelling." Tr. 759.

Since the accident, though, Plaintiff has experienced persistent back pain and numbness in her right leg and other lower extremities. Tr. 14, 279, 329. A CT scan of Plaintiff's lumbar spine "revealed arthropathy, joint space narrowing, and [a] vacuum phenomenon at the L4-5 facet joints bilaterally." Tr. 279. In addition to chronic back pain and numbness, Plaintiff also complains of migraines, chronic obstructive pulmonary disease ("COPD"), asthma, sleep apnea, anxiety, arthritis, environmental allergies, intestinal issues such as polyps and chronic

constipation, carpal tunnel syndrome, and Antiphospholipid Antibody Syndrome,[2] among other ailments. Tr. 22, 258-59, 278, 357.

As stated, Plaintiff applied for disability in September 2013 and had a hearing in front of an ALJ in December 2015. Tr. 32. Twenty days after the hearing, the ALJ issued her decision, which found that the severe impairments the ALJ found Plaintiff to suffer from did not preclude her ability to perform past relevant work as a family coordinator and a process server. Tr. 26. Accordingly, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act.[3] Tr. 26. On April 7, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. Tr. 1. This timely appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

---

[2]The Court finds no evidence, outside of Plaintiff's own subjective complaints, to indicate she suffers from Antiphospholipid Antibody Syndrome. Rather, it appears, as her treating physician, Wendall C. Heidinger, M.D., noted, she has a family history of the illness. Tr. 721, 724.
[3]Plaintiff's claim had been initially denied on March 5, 2014, and upon reconsideration on October 15, 2014. Tr. 14.

§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1. Plaintiff has not engaged in substantial gainful activity since her amended alleged onset date of August 1, 2011. (20 CFR § 404.1571 *et seq.*). Tr. 16.

2. Plaintiff has the following severe medically determinable impairments: trochanteric bursitis/sacroiliac dysfunction; mild facet arthropathy/lumbago; COPD; asthma; sleep apnea; and obesity. (20 CFR § 404.1520(c)). Tr. 17.

3. Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (20 CFR §§ 404.1520(d), 404.1525 & 404.1526). Tr. 19.

   a. Plaintiff has the RFC to perform a reduced range of light work. She can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand or walk for six hours in an eight-hour workday, and she can sit for six hours in an eight-hour workday. She needs the ability to sit or stand at will while remaining on task. She can frequently climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can occasionally stoop and frequently kneel, crouch, and crawl. Tr. 19.

4. Plaintiff is capable of performing past relevant work as a family coordinator and process server. (20 CFR § 404.1565). Tr. 25.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance,'" or more clearly stated, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r. Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) analyzing the evidence at step two of the sequential analysis improperly; (2) failing to properly weigh the medical evidence of record; (3) improperly affording little weight to Plaintiff's and her friend's testimony and/or statements regarding Plaintiff's physical and mental impairments; and (4) failing to supply substantial evidence to support her finding that Plaintiff is capable of performing past relevant work. For the reasons below, the Court holds that the ALJ's findings were supported by substantial evidence.

## I. The ALJ properly analyzed the evidence at step two of the sequential analysis.

As stated, the ALJ determined Plaintiff suffered from trochanteric bursitis/sacroiliac dysfunction, mild facet arthropathy/lumbago, COPD, asthma, sleep apnea, and obesity. Tr. 17. The ALJ also found Plaintiff did not suffer from a severe mental impairment. Tr. 17-18. Plaintiff contends the evidence aptly demonstrates that she has other severe impairments, namely, diverticulosis, carpal tunnel syndrome, colon polyps, and a prolapsed bladder/bladder

incontinence. She further argues that she does in fact suffer from severe mental impairments, including depression and suicidal thoughts, and that the record sufficiently demonstrates this as well.

At step two of the sequential analysis, the claimant bears the burden of establishing that she has a severe impairment, and must do so by providing medical evidence. 20 C.F.R. §§ 404.1512; 416.912. An impairment or combination of impairments is severe if they significantly limit a claimant's physical or mental ability to do basic work activities. *Key v. Heckler*, 754 F.2d 1545, 1548 (9th Cir. 1985). An impairment or combination of impairments is "'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (emphasis in original)).

Here, Plaintiff points to evidence in the record establishing a history of a prolapsed bladder/bladder incontinence, diverticulosis, carpal tunnel syndrome, and colon polyps. *See, e.g.*, Tr. 704, 712, 763-64. The medical evidence suggests, however, that these ailments have either been treated such that Plaintiff no longer appears to suffer from them or have been adequately brought under control such that they now appear to pose no obstacles to performing work-related activities.

First, while the medical evidence makes numerous references to Plaintiff's prolapsed bladder and/or bladder incontinence, the Court also finds repeated references in the record from Plaintiff's health care providers indicating her ability to adequately "handle toileting hygiene" without any assistance. *See, e.g.*, 463, 704-05. Likewise, while Plaintiff was diagnosed with diverticulosis in 2006, Tr. 762, 764, her gastroenterologist specifically stated that "[n]o special medication [was] needed" and that Plaintiff "should do well," so long as she follows a high-fiber

diet. Tr. 764. There is nothing to indicate this diagnosis has changed; in fact, Plaintiff's 2015 colonoscopy came back normal. Tr. 724. Similarly, after Plaintiff's 2006 colonoscopy, her gastroenterologist informed her that her examination showed colon polyps, but that the polyps were removed and no symptoms were expected "after the colonoscopy and polypectomy." Tr. 763. Indeed, as stated, Plaintiff's most recent colonoscopy came back normal. Tr. 724. The same is true with respect to Plaintiff's bout with carpal tunnel syndrome. While Plaintiff undoubtedly suffered from carpal tunnel syndrome, *see, e.g.*, Tr. 364, 712, a February 16, 2014, physical examination indicated Plaintiff was "able to grip and hold objects securely" and was "able to grasp and manipulate both large and small objects with the first three digits." Tr. 367.

As discussed, this Court must affirm the ALJ's decision if it is supported by substantial evidence in the record, 42 U.S.C. § 405(g); *Batson*, 359 F.3d at 1193, which simply means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray*, 554 F.3d at 1222 (quoting *Andrews*, 53 F.3d at 1039). Here, based on the medical evidence, one could reasonably find that none of the ailments Plaintiff cites can be said to rise to the level of a severe impairment and, thus, that the ALJ's finding was supported by substantial evidence. In fact, to be considered severe, the impairment must significantly limit Plaintiff's ability to do basic work activities, which is defined as "the abilities and aptitudes necessary to do most jobs." *Hundrieser v. Heckler*, 582 F. Supp. 1231, 1235 (N.D. Ill. 1984). As explained above, however, all of the physical impairments Plaintiff cites appear to be under control or no longer existent, and certainly do not rise to the level of affecting her ability to engaged in basic work activities. Hence, the ALJ properly treated these additional impairments as non-severe.

The same is true with regard to Plaintiff's mental impairments. Plaintiff's treating physician, Wendall C. Heidinger, M.D., did state in October 2014 that Plaintiff suffered from depression and anxiety, Tr. 392, and this finding is also consistent with the longitudinal medical record, which indicates Plaintiff has long dealt with depressive tendencies and anxiety. *See, e.g.*, 714, 718. Nevertheless, in the same report, Dr. Heidinger also stated, as the ALJ found, that Plaintiff's anxiety and depression did not preclude her from working and that she was capable of low-stress work. Tr. 392. Reinforcing this finding is psychologist Michael F. O'Connell's diagnosis that Plaintiff suffered from somatic symptom disorder with mixed anxiety and a depressed mood but was "capable of understanding and remembering the kinds of instructions that might be presented to her in a typical work setting." Tr. 359-60. Dr. O'Connell further opined that while Plaintiff felt depressed and anxious much of time and has a history of suicidal thoughts, she denied "any recent suicidal ideation," "has not had any mental health services and has not felt that these services had been needed since the suicide attempt in her middle 30s." Tr. 355, 357-58. Hence, the medical evidence indicates that while Plaintiff experienced depression and anxiety, the impairments did not and do not significantly limit Plaintiff's ability to do basic work activities. Plaintiff does not point to any medical evidence that rebuts these findings. Based on the medical evidence, then, it was reasonable for the ALJ to conclude Plaintiff did not suffer from a severe mental impairment. Accordingly, for the foregoing reasons, the Court finds the ALJ did not err in her analysis of the evidence at step two of the sequential analysis.

## II. The ALJ properly weighed the medical opinions of record

Plaintiff contends the ALJ failed to properly weigh the medical opinions of record. Specifically, she argues the ALJ attached too much weight to examining physicians, whose

assessments were far too short to glean the type of medical information Plaintiffs contends was necessary to properly diagnose her, and thus too little weight to her treating physician's opinions.

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the ALJ 'must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is insufficient. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explains why they, rather than the doctors', are correct." *Id.* (internal citations and quotations omitted). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Here, the ALJ weighed the medical opinions of Plaintiff's treating physician, consultative examiners J. Wendling and Psychologist Michael O'Connell, and state agency medical consultants. Tr. 17, 23-24. The ALJ gave partial weight to Plaintiff's treating physician, Dr. Heidinger, who opined that Plaintiff had migraines, depression, anxiety, chronic pain, COPD, asthma, sleep apnea, allergies, and a hearing impairment; that her impairments were stable; that Plaintiff could engage in low-stress work but would likely miss more than four days a month; that Plaintiff could rarely lift more than twenty pounds and could only stand, sit, and walk for up two hours in an eight-hour workday; and that Plaintiff could occasionally climb stairs and twist but could never stoop, squat, or climb ladders. Tr. 390-92, 730-38. The ALJ noted that Dr. Heidinger's opinion was "grossly inconsistent with the record as a whole, including the claimant's robust activities of daily living and the medical evidence of record as a whole." Tr. 24. In assigning limited weight to Dr. Heidinger's opinion, the ALJ provided a detailed summary of the facts; specifically, she detailed clinical evidence indicating Plaintiff had:

> normal gait, strength, sensation, reflexes, muscle tone, and muscle bulk. She could heel walk, toe walk, hop, and squat without difficulty. She was also able to tandem walk but had some difficulty due to carry through of her left leg not being smooth. . . . Overall, her lungs were clear and there were no signs of muscle spasms, tenderness, crepitus, trigger points, or other deformities. As for manipulative activities, she could grip, grasp, hold, and manipulate objects, . . . could lift and carry 50 pounds occasionally and 25 pounds frequently, . . . [and] could stand and walk for up to 6 hours in an 8-hour workday, and she could sit for up to 6 hours in an 8-hour workday. She could frequently climb, balance, stoop, kneel, crouch, and crawl.

Tr. 23. The ALJ further opined that Plaintiff was previously referred to physical therapy to improve her gait, made steady progress toward her goals, and within about two months, "was discharged because her goals were met early." Tr. 21. Indeed, Plaintiff's home health care reports indicate Plaintiff was discharged from physical therapy on March 6, 2015, because all of her goals were met, Tr. 657, and that Plaintiff's sitting balance was steady and safe, she was able

to arise on the first attempt, was able to stand steadily without any support, was able to sit down in a smooth motion, and there was no hesitation in initiation of her gait.[4] Tr. 667. As for Dr. Heidinger's diagnosis of depression and anxiety, the ALJ detailed the evidence provided by Dr. O'Connell, an examining physician whose opinions the ALJ assigned great weight. Dr. O'Connell found that Plaintiff suffered from mixed anxiety and a depressed mood but was "capable of understanding and remembering the kinds of instructions that might be presented to her in a typical work setting." Tr. 359-60. There is no conflicting medical evidence that challenges Dr. O'Connell's diagnosis; even Dr. Heidinger's opinion appears consistent with this finding, as he acknowledged Plaintiff was capable of low-stress work. Tr. 392.

It is the ALJ's, and not the Court's, responsibility to determine credibility, resolve conflicts in medical testimony, and resolve ambiguities. *Garrison*, 759. F.3d at 1009. Here, as demonstrated, the ALJ did just that, setting forth detailed explanations and interpretations explaining why Dr. Heidinger's opinion was entitled to only partial weight; these explanations and interpretations were supported by clinical evidence, which was provided by examining physicians and medical records. While Plaintiff clearly disagrees with the ALJ's credibility determinations and resolution of conflicting medical testimony, a disagreement over evidence is not enough to reverse the ALJ. Accordingly, the ALJ did not err in assigning limited weight to Dr. Heidinger's opinion.

/ / /

/ / /

/ / /

---

[4]Plaintiff was referred to home health care for physical therapy in order to address right lower extremity weakness that had resulted in falls. Tr. 22, 457.

### III. The ALJ properly afforded limited weight to Plaintiff's testimony and to her friend's function report

#### A. Plaintiff's testimony

Plaintiff argues the ALJ erroneously discredited Plaintiff's testimony. Plaintiff reported and/or testified that she experienced recurring pain in her neck, back, and shoulder caused by arthritis; shortness of breath due to COPD; incontinence; insomnia; concentration difficulties; difficulty understanding; difficulty getting along with others; depression; anxiety; migraines; and difficulty gripping or adequately holding items due to carpal tunnel syndrome, as well as troubling "bending, kneeling and stooping due to pain from arthritis and bursitis." Tr. 216-18, 221, 258-59. She also reported and/or testified that, despite these physical limitations, she continued to work, albeit it sporadically, up through her December 2014 hearing as a real-estate auctioneer, and that she remains capable of doing laundry, vacuuming, dusting, shopping, and can use her leaf blower outside, but that her son or his girlfriend helps her do laundry, bathe, and shop, and that she cannot do yard work, nor can she lift more than three or four pounds comfortably. Tr. 36, 44, 47, 219-20. Based on what she described as "a number of inconsistent statements about her general health and medical conditions," the ALJ attached limited weight to Plaintiff's testimony and subjective complaints. Tr. 20-22.

When, as here, a plaintiff has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the [plaintiff's] testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281. A general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints

are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

Here, the ALJ provided a detailed review of Plaintiff's testimony, subjective complaints, and the evidence that suggested her complaints should be given limited weight. *See* Tr. 20-22. Notably, the ALJ pointed to the fact that "[a]lthough the claimant reported persistent back pain and numbness in her leg related to a 2010 motor vehicle accident," she continued to work through the amended alleged onset date and even did so sporadically through the date of her hearing. Tr. 20-21. As the ALJ stated, "[t]he fact her impairments did not prevent her from working prior to her amended alleged onset date strongly suggests they would not currently prevent work." Tr. 20.

Moreover, the ALJ stated that while Plaintiff was diagnosed with sleep apnea, an August 2014 sleep study showed Plaintiff did not have significant obstructive sleep apnea.[5] Tr. 403. Additionally, the ALJ noted that the while Plaintiff reported severe and persistent back pain, as well as numbness and burning down her right leg following her 2010 motor vehicle accident, medical evidence in the record suggested only minimal to mild arthropahy and showed symptom improvement. Tr. 21. Indeed, a June 2010 CT scan indicated Plaintiff's "vertebrae appear[ed] normal in height and alignment." Tr. 759. A February 2014 x-ray confirmed this, finding that Plaintiff's "vertebral bodies maintain normal height and alignment without fracture or subluxation" and that her "intervertebral disc spaces are preserved" with "mild multilevel facet arthropathy." Tr. 382. Additionally, as explained, Plaintiff's home health care reports indicate

---

[5] The ALJ states that despite this sleep study, "in an abundance of caution," she treated her sleep apnea as a severe impairment and accounted for it in her RFC analysis. Tr. 21.

she was discharged from physical therapy on March 6, 2015, because all of her goals were met; as those records indicate, Plaintiff's pain was being "adequately controlled" and Plaintiff demonstrated "improved activity tolerance" and symptom improvement after engaging in physical therapy. Tr. 642, 657, 670. This medical evidence, the ALJ argued, suggested Plaintiff's symptomatic complaints may be "somewhat exaggerated and inconsistent with the other evidence." Tr. 20.

Finally, the ALJ stated, Plaintiff failed to reconcile her daily activities with her claim that she was unable to care for herself without assistance; as the ALJ put it:

> The record [] showed that the claimant spent her time hosting yard sales, working, eating out, participating in a ladies' pool league, donating plasma, watching television, and doing arts and crafts. Such activities of daily living undermine her assertions related to the intensity, persistence, and limiting effects of her symptoms. It also indicates that her daily activities have, at times, been somewhat greater than generally reported.

Tr. 22 (citing Tr. 216-23; 354-62; 34-59).

In sum, then, the ALJ did not arbitrarily discredit Plaintiff's testimony; rather, she offered specific evidence that convincingly suggests why Plaintiff's complaints are not entirely consistent with the evidence and therefore why her testimony is only entitled to limited weight. As discussed, this is all that is required. *See Smolen*, 80 F.3d at 1281 ("the ALJ can reject the [plaintiff's] testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so"). Consequently, the ALJ did not err in assigning limited weight to Plaintiff's testimony and subjective complaints.

### B. Jennifer Peterson's function report

Jennifer Peterson, a friend of Plaintiff's, provided a third-party function report describing how, according to her observations and interactions with Plaintiff, Plaintiff's ailments have limited her daily life activities. Tr. 248-255. The ALJ assigned little weight to Ms. Peterson's

statements, stating they "generally mirrored the claimant's reports of pain, limitations, and activities of daily living," which the ALJ also discounted. Tr. 20

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal citations omitted). Indeed, "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19 (internal citations omitted). Lay witness testimony cannot be discounted without providing germane reasons for doing so. *Id.* at 919. One germane reason for which an ALJ may discredit lay testimony is that it is substantially similar to a claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

Ms. Peterson's statements of Plaintiff's conditions are similar to Plaintiff's own subjective complaints. For instance, Ms. Peterson, like Plaintiff, states that since her 2010 car accident, Plaintiff has been in constant pain in her back and lower extremities and has trouble doing chores and other self-care but is capable of vacuuming and dusting and gets help with outdoor chores via family members. Tr. 249-50. Accordingly, in light of the similarity between Ms. Peterson's statements and Plaintiff's own subjective complaints, and because of the Court's conclusion that the ALJ provided clear and convincing reasons for providing limited weight to Plaintiff's subjective complaint, "it follows that the ALJ also gave germane reasons for" providing limited weight to Ms. Peterson's testimony. *Valentine*, 574 F.3d at 694.

# IV. The ALJ provided substantial evidence to support her finding that Plaintiff is capable of performing past relevant work.

Finally, Plaintiff argues the ALJ failed to set forth substantial evidence showing Plaintiff is capable of performing her past relevant work. At step four of the sequential analysis, the ALJ

concluded Plaintiff was capable of performing her past relevant work as a family coordinator and a process server. Tr. 25. The ALJ based this finding on the Commissioner's vocational expert, who testified at the December 2015 hearing that a hypothetical individual with Plaintiff's RFC could "return to the family coordinator position [and] the process server position."[6] Tr. 56-57.

Plaintiff sets forth two arguments as to why she believes the ALJ erroneously found her capable of performing past relevant work. First, she argues the ALJ neglected "other severe diagnosed disabilities"—namely, diverticulosis, carpal tunnel syndrome, colon polyps/colon cancer, and prolapsed bladder/bladder incontinence—in conducting her RFC analysis. Pl.'s Opening Brief, at 2. Second, she states the Commissioner's vocational expert in fact stated that she was not capable of performing her past relevant work, or, for that matter, from engaging in substantial gainful activities of any kind. The Court addresses each in turn.

Plaintiff's argument that the ALJ neglected to consider other severe impairments is, in essence, an argument that the ALJ's RFC finding was erroneous. The RFC is the most a person can do, despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant" medical and other evidence, including the claimant's testimony. 20 C.F.R. §§ 404.1545, 416.945. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence

---

[6]The vocational expert also testified that Plaintiff could return to her real-estate-auctioneer position and her past position as a court mediator. Tr. 57. The ALJ found, however, that there was insufficient evidence to determine whether Plaintiff's earnings in her position as a real-estate auctioneer rose to the level of substantial gainful activity. T. 25. Moreover, the ALJ found that the recorded demonstrated Plaintiff's earnings as a court mediator did not rise to the level of substantial gainful activity. Tr. 25. Consequently, these positions were not included in the ALJ's non-disability finding because they did not meet the definition of substantial gainful activity. Tr. 25.

must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, there was not substantial evidence to incorporate any limitations caused from diverticulosis, carpal tunnel syndrome, colon polyps/colon cancer, and prolapsed bladder/bladder incontinence into her RFC analysis. As explained, Plaintiff does point to evidence in the recording establishing a history of a prolapsed bladder/bladder incontinence, diverticulosis, carpal tunnel syndrome, and colon polyps—although the Court is unable to find any evidence of colon cancer. *See, e.g.*, Tr. 704, 712, 763-64. Any limitations caused by these impairments were not, however, supported by substantial evidence. Indeed, as set out in Section I, the medical evidence suggests these impairments have either been treated such that Plaintiff no longer appears to suffer from them or have been adequately brought under control such that they now appear to pose no obstacles to performing work-related activities. *See, e.g.*, Tr. 364, 367, 463, 704-05, 712, 724, 762-64. Because no limitations arising from these impairments were supported by substantial evidence, the ALJ was entitled to exclude them from her RFC analysis. Hence, the ALJ did not err by failing to incorporate alleged limitations from diverticulosis, carpal tunnel syndrome, colon polyps/colon cancer, and prolapsed bladder/bladder incontinence into her RFC analysis and, in turn, the hypothetical question she posed to the vocational expert. The ALJ's RFC analysis considered all the symptoms and their limitations, to the extent those limitations were supported by substantial evidence. Her RFC analysis was thus legally sufficient.

Next, the Court finds Plaintiff's argument that the vocational expert testified Plaintiff was not capable of performing her past relevant work or from engaging in substantial gainful activities of any kind unfounded. The vocational expert was asked two separate hypothetical questions, one from the ALJ and one from Plaintiff's counsel. The ALJ's hypothetical question

asked whether an individual with Plaintiff's RFC could "perform any of the claimant's past relevant work." Tr. 56. The vocational expert responded, "within the confines" of the ALJ's hypothetical, that Plaintiff could "return to the family coordinator position [and] the process server position." Tr. 56-57. By contrast, Plaintiff's attorney's hypothetical question asked whether it was possible to perform Plaintiff's past relevant work if "an individual with the same age, education and work experience as the claimant here" "was limited to a sedentary RFC, sedentary work only; needed to alternate positions at will; [was] limited to [semi-skilled] SVP 3 or less types of jobs due to distractions from symptoms[,] and . . . over the course of a week," could perform only "15 percent of [the] task overall." Tr. 58-59. To that question, the vocational expert responded, "[n]o, in my opinion, that individual would have a very difficult time performing any work." Tr. 59.

As the exchanges demonstrate, the vocational expert did not open-endedly testify Plaintiff could not engage in past relevant work or any substantial gainful activity; instead, his testimony that Plaintiff could not return to past relevant work was qualified, and therefore limited, by Plaintiff's attorney's question, which assumed Plaintiff experienced a broader array of limitations and had a more restrictive RFC than the ALJ found Plaintiff actually had. In fact, the vocational expert explicitly testified that a hypothetical individual with the RFC that the ALJ actually and justifiably found Plaintiff retained could return to Plaintiff's past relevant work as a family coordinator or a process server. Accordingly, Plaintiff's claim that the vocational expert testified she could not return to her past relevant work is inaccurate. For these reasons, the Court finds no error at step four of the sequential analysis.

/ / /

/ / /

**ORDER**

Based on the foregoing, the Court finds that the ALJ's decision was supported by the record. The Commissioner's decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this ⁄ day of May, 2017.

MARK D. CLARKE
United States Magistrate Judge